UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| NICHOLAS J.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:25-cv-00040-RLY-CSW |
| | ) | |
| FRANK BISIGNANO, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Nicholas J., suffers from a variety of mental health disorders, including depression and anxiety. He filed a request for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his Title II application for Disability Insurance Benefits. The court referred the matter to the Magistrate Judge, who recommends that this court affirm the Commissioner's decision. Plaintiff objects. For the reasons explained below, the court **OVERRULES** Plaintiff's Objection, **ADOPTS** the Magistrate Judge's Report and Recommendation ("R&R"), and **AFFIRMS** the Commissioner's decision denying benefits.

---

[1] To protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

I.      **Standard of Review**

"When a party makes objections to a magistrate judge's recommendations, '[t]he district court is required to conduct a *de novo* determination of the magistrate judge's report and recommendations to which objections have been filed.'" *Davis v. Saul*, 446 F. Supp. 3d 406, 408 (N.D. Ind. 2020) (qupting *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995)). *De novo* review "requires the district judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013).

In contrast, the court's review of the ALJ's factual findings is deferential. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). When reviewing a decision to deny benefits, the court "will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). In making a substantial evidence determination, a court may not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). So long as the ALJ's decision is supported by substantial evidence, and the ALJ built a logical and accurate bridge between the

evidence and the conclusion, the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014).

## II. Background

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. 20 C.F.R. § 404.1520(a). Plaintiff bears the burden of proof at every step except step five. *Clifford*, 227 F.3d at 868.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2020. (Dkt. 7-2 at ECF p. 13). At steps two and three, the ALJ found Plaintiff had been diagnosed with attention deficit hyperactivity disorder ("ADHD"), major depressive disorder, generalized anxiety disorder, and bipolar disorder, but that those impairments, alone or in combination, did not medically equal a listing. (*Id.* at ECF pp. 13–15). Before step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following additional limitations:

> [Plaintiff] can understand, remember, and carry out simple instructions for simple, repetitive tasks on a *sustained basis* in a work setting requiring no more than *occasional interactions* with coworkers, supervisors, and the general public for the purposes of performing simple, repetitive tasks. He can tolerate simple changes in the routine work setting, and he can solve problems for purposes of performing simple, repetitive tasks.

(*Id.* at ECF p. 16) (emphasis added). At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at ECF p. 21). And at step five, the ALJ considered Plaintiff's age, education, work experience, and RFC before concluding that

there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including floor waxer, laundry aide, and marker. (*Id.* at ECF pp. 21–22).

### III. Discussion

There were three issues before the Magistrate Judge: (1) whether the ALJ erred in basing his RFC determination on his lay interpretation of the evidence; (2) whether the RFC accounts for all of Plaintiff's conditions; and (3) whether the ALJ's subjective symptom analysis was patently wrong. The Magistrate Judge found that the ALJ based the RFC on the opinions of medical experts—specifically, Dr. Maura Clark's opinion—and that the ALJ's analysis of the medical opinions satisfied the minimal articulation requirement. (Dkt. 16 at ECF pp. 8, 10). The Magistrate Judge further found that the RFC accounts for Plaintiff's conditions and is supported by substantial evidence. (*Id.* at ECF p. 11). And she found that the ALJ's subjective symptom analysis was not patently wrong. (*Id.* at ECF p. 13).

Plaintiff objects, arguing that the Magistrate Judge committed largely the same errors as the ALJ.

#### A. Medical Opinion Evidence

The court begins with whether the Magistrate Judge erred in finding that "the ALJ properly based his findings on a medical expert's opinion, rather than improperly on his own lay opinion." (*Id.* at ECF p. 10).

The RFC is a measure of what an individual can do despite his mental and physical limitations. 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p (stating the RFC is "an assessment of an individual's ability to do sustained work-related physical and mental

4

activities in a work setting on a regular and continuing basis").  In determining what an individual can do despite his limitations, the ALJ "must consider the entire record, including all relevant medical and nonmedical evidence." *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995).  "[T]he determination of a[n] [individual's] RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas*, 745 F.3d at 808.

### 1. Social Interaction Limitation

Before the Magistrate Judge, Plaintiff argued that the RFC did not align with the psychological opinions of two state agency psychological consultants and two psychological examiners.  The Magistrate Judge rejected Plaintiff's argument because the RFC and the opinion of Dr. Clark, the state agency reviewing psychologist, "are nearly identical."  (Dkt. 16 at ECF pp. 7; *see also id.* at ECF p. 8 (noting the ALJ also relied on "Dr. [Charles] Rhoton's records from over three years of treating [Plaintiff]," which also supports the limitations set forth in the RFC)).  Relevant here, the Magistrate Judge illustrated that point by comparing the RFC's social interaction limitation with Dr. Clark's opinion:

> **RFC:** "work setting requiring no more than *occasional interactions* with coworkers, supervisors, and the general public for the purposes of performing simple, repetitive tasks."
>
> **Dr. Clark:** "able to respond appropriately to *brief supervision and interactions* with coworkers and work situations."

(*Id.* at ECF p. 7) (emphasis added).

5

In his Objection, Plaintiff argues Dr. Clark's opinion that Plaintiff is capable of "brief" interactions with coworkers and work situations is inconsistent with the ALJ's finding that Plaintiff can perform work requiring "occasional" interactions with coworkers, supervisors, and the general public.  As support, she cites unpublished district court decisions that found "brief" and "occasional" are not interchangeable terms.[2]  This is because the term "occasionally" is defined in Social Security Ruling 83-10 as "up to one-third of the day," whereas the term "brief" is undefined in the regulations but generally understood to mean a much shorter period of time.  *See*, *e.g.*, *Melissa A. v. Kijakazi*, No. 1:21-cv-875, 2022 WL 1303404, at *3 (S.D. Ind. Mar. 17, 2022), *report and recommendation adopted*, 2022 WL 2079224 (S.D. Ind. June 9, 2022) (adopting the dictionary definition of "brief" as meaning "short in duration, extent, or length" and recommending reversal because it was not clear "how the ALJ went from finding Dr. Clark's opinion persuasive—that Plaintiff is limited to no more than brief supervision and brief interaction with co-workers—to the conclusion that nevertheless, she could actually handle interaction and supervision up to one-third of a work day").

Given the Seventh Circuit's decision in *Reynolds v. Kijakazi*, the legal foundation of those district court cases is faulty.  25 F.4th 470 (7th Cir. 2022).  There, the RFC stated that plaintiff was capable of "occasional interaction with co-workers and supervisors."  *Id*.  In formulating the RFC, the ALJ found persuasive the state agency consultant's

---

[2] *George S. v. Kijakazi*, No. 1:22-cv-169-JVB, 2023 WL 3436712, at *3 (N.D. Ind. Apr. 21, 2023); *Melissa A. v. Kijakazi*, No. 1:21-cv-875, 2022 WL 1303404, at *3 (S.D. Ind. Mar. 17, 2022), *report and recommendation adopted*, 2022 WL 2079224 (S.D. Ind. June 9, 2022); *Bishton v. Kijakazi*, No. 2:20-cv-136, 2021 WL 5564309, at *8 (N.D. Ind. Nov. 29, 2021).

6

opinion that plaintiff could respond to "brief supervision and interactions" with co-workers. *Id.* at 472. Plaintiff argued that in addition to those "quantitative limitations," the ALJ should have imposed the "qualitative" interaction limitation of "superficial" in his RFC assessment. *Id.* at 473. The court of appeals found that the state agency consultant's opinion that the plaintiff can respond to "brief" interaction did not equate to "superficial" interaction and that no medical evidence indicated greater limitations than the "occasional interaction" contained in the RFC. *Id.* at 474. The court also found plaintiff's argument regarding the definition of "occasional" in the Dictionary of Occupational Titles ["DOT"]—meaning up to one-third of a work-day—was "misleading because the DOT definition does not refer to interactions with others; instead, it refers to the frequency with which an employee would have to exert various amounts of physical force." *Id.*

Like the definition of "occasional" in the DOT, the definition of "occasionally" in Social Security Ruling 83-10 is in the context of exertional limitations, not nonexertional limitations like those presented here. *See Cardoza v. Kijakazi*, No. 1:20-CV-332-TLS-SCL, 2023 WL 2261498, at *5 (N.D. Ind. Feb. 28, 2023) ("Similarly, the definition of 'occasionally' in Social Security Ruling 83-10 is provided in the context of the exertional demands of strength activities (sit[t]ing, standing, walking, lifting, carrying, pushing, and pulling) throughout a workday.")). Therefore, Plaintiff's reliance on district court cases standing for the proposition that the adjective "brief" is never interchangeable with "occasional" is not persuasive. This is not to say that the terms *are* interchangeable; just that the deviation in language is not necessarily error. *See Recha v. Saul*, 843 F. App'x 1,

7

4 (7th Cir. 2021) ("[A]n ALJ has some latitude with the exact wording of an RFC as long as it conveys in some way the restrictions necessary to address a claimant's limitations."). And here, the deviation in language is not error because, like the plaintiff in *Reynolds*, Plaintiff has not identified any evidence that he would be unable to interact with supervisors and coworkers "occasionally" as provided in the RFC. *Reynolds*, 25 F.4th at 474 (finding that, other than the DOT definition of "occasional," the plaintiff "cite[d] no other support for the notion that the ALJ's RFC would require h[im] to interact with supervisors and coworkers for up to two hours and forty minutes per day.").

Finally, Plaintiff's contention "that the ALJ must explicitly explain any deviation from [Dr. Clark's] report lacks grounding." *Langley v. O'Malley*, No. 22-3008, 2024 WL 3649021, at *4 (7th Cir. Aug. 5, 2024). An ALJ is not required to "rely entirely on a particular physician's opinion or to choose between the opinions [of] any of the claimant's physicians." *Id.* (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)). In assessing a plaintiff's RFC, an ALJ is required to "consider the entire record." *Id.* And here, the ALJ did just that. The ALJ specifically noted that Dr. Clark's opinion was "mostly persuasive" and concluded that "[t]he evidence of record supports finding that the claimant is limited to having no more than occasional interactions." (Dkt. 7-2 at ECF p. 20). The ALJ provided support for that conclusion—Plaintiff reported he spends time with friends (albeit rarely), takes his children to school, gets along with authority figures, and has never been fired from a job due to difficulty getting along with others. (*Id.* at ECF p. 15). The ALJ also discussed, among other things, Plaintiff's medical records from his treating psychiatrist, Dr. Rhoton, spanning from July 2020 to August 2023. (*Id.* at

8

ECF pp. 17–19). Those records reflected that Plaintiff was doing well overall and his mental status examinations were within "normal limits." (*Id.*). That evidence, the ALJ concluded, supported his finding that Plaintiff could handle "no more than occasional interactions with coworkers, supervisors, and the general public for purposes of performing simple, repetitive tasks." (*Id.* at ECF p. 19). Accordingly, the court finds any deviation from Dr. Clark's opinion was supported by substantial evidence.

### 2. Concentration and Focus Limitations

Next, Plaintiff contends that the Magistrate Judge erred in upholding the ALJ's assessment of Dr. Gray's opinion regarding Plaintiff's concentration and focus limitations. Dr. Gray is a state agency psychological consultant who issued a report that included an opinion regarding Plaintiff's ability to consistently manage work-life stressors. In particular, he opined:

> From a strictly neurocognitive perspective, the claimant may have some issues with highly complex and perhaps some very highly detailed types of tasks. He would continue to do better from more simple repetitive types of task[s]. . . . [Plaintiff's] primary difficulty would seem to be one of consistency. Indeed, he did report quite a bit of anhedonia at times. He may also have some issues with persistence and pace secondary to his issues with attention and concentration. From a psychological perspective, he would have a great deal of difficulty *consistently handling work life stressors*, being very reliable or independent particularly if the tasks were highly complex or detailed in nature. . . . He would seem to have perhaps a moderate degree of difficulty consistently relating to coworkers and interacting with supervisors secondary to depression and anxiety.

(Dkt. 7-7 at ECF p. 422) (emphasis added). The ALJ concluded:

> The undersigned finds this opinion somewhat persuasive, as it is consistent with [Plaintiff's] continued complaints of depression and anxiety. However, it is not supported by Dr. Rhoton's records, discussed above, showing that

9

>just about a week prior, [Plaintiff] had normal mental status examination findings and was doing well with his medications.

(Dkt. 7-2 at ECF p. 18).

Plaintiff argues that Dr. Gray's opinion warranted "greater restrictions." (Dkt. 17 at ECF p. 5). But a closer read of his opinion shows otherwise. With respect to work-related stress, Dr. Gray opined that Plaintiff "would have a great deal of difficulty consistently handling work life stressors, being very reliable or independent *particularly if the tasks were highly complex or detailed in nature*." (Dkt. 7-7 at ECF p. 422) (emphasis added). But Dr. Gray did not opine that Plaintiff would have difficulty handling the stress associated with simple, repetitive tasks; on the contrary, he stated these tasks would be better for Plaintiff, consistent with the RFC assessment. (*Id.*) ("He would continue to do better from more simple repetitive types of task[s]."). The restrictions to simple, repetitive tasks; limited social interactions; and only simple changes in a routine work setting directly speak to Plaintiff's ability to manage stress. And while Plaintiff may not agree with them, it was not error.

### 3. Plaintiff's "Continued Symptoms"

Lastly, Plaintiff faults the ALJ's finding, which was reiterated by the Magistrate Judge, that Plaintiff "had normal mental status examination findings and was doing well with medications." (Dkt. 17 at ECF p. 5 (quoting Dkt. 16 at ECF p. 8)). The R&R reads:

>Regarding Dr. Gray's opinion: "The undersigned finds this opinion somewhat persuasive, as it is consistent with the claimant's continued complaints of depression and anxiety. However, it is not supported by Dr. Rhoton's records, discussed above, showing that just about a week prior, he *had normal mental status examination findings and was doing well with his medications*. Therefore, it is only somewhat persuasive. It also supports finding that the

10

claimant can perform work activity within the restrictions of the above residual functional capacity assessment.

(Dkt. 16 at ECF p. 8 (emphasis added) (citing Dkt. 7-2 at ECF p. 18)). Plaintiff claims both the ALJ and the Magistrate Judge erred because "Dr. [Melissa] Jones found Plaintiff's symptoms have continued *despite medications*." (Dkt. 17 at ECF p. 5).

Dr. Jones performed a psychological examination of Plaintiff on December 6, 2022. (Dkt. 7-7 at ECF pp. 436–41). Plaintiff reported that he experiences a "depressed mood nearly every day, . . . poor concentration, constant worry, . . . [and] attention difficulties," and that "[h]is symptoms have continued even with medication management." (*Id.* at ECF p. 440).

There are two problems with Plaintiff's argument. First, despite Plaintiff's statements to Dr. Jones regarding the severity of his symptoms, Dr. Jones found "[Plaintiff] does not exhibit any significant mental health or intelligence deficits that would prohibit him from gaining and maintaining employment," and that "his biggest obstacles in the way of him gaining and maintaining employment appear to be his statement that he is not working due to being a stay-at-home father at the present time." (Dkt. 7-2 at ECF pp. 440–41).

Second, consistent with 20 C.F.R. § 404.1520c(b) & (c), the ALJ found that Dr. Jones' opinion was *unpersuasive* because it was not "consistent or supported by the mild findings of record, discussed above [and] . . . is also not supported by [Plaintiff's] consistent complaints of depression and anxiety throughout the period of adjudication." (Dkt. 7-2 at ECF p. 19). As the Magistrate Judge concluded, the ALJ's analysis of the

11

medical opinions satisfied the minimal articulation requirement. (Dkt. 16 at ECF pp. 8–9); *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("Time and time again, we have emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements."); *Michael T. v. Kijakazi*, No. 22 c 2883, 2023 WL 7281819 (N.D. Ill. Nov. 3, 2023) ("An ALJ need only articulate 'how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record.'") (quoting 20 C.F.R. § 404.1520c(b)).

Accordingly, the court finds no error with the Magistrate Judge's "reiteration of the ALJ's conclusion that Plaintiff 'had normal mental status examination findings and was doing well with his medications.'" (Dkt. 17 at ECF p. 5 (quoting Dkt. 16 at ECF p. 8)).

### B. Consideration of the Entire Record

Before the Magistrate Judge, Plaintiff argued that the RFC failed to accommodate all his conditions—namely, his ADHD, major depressive disorder, generalized anxiety disorder, and bipolar disorder. The Magistrate Judge concluded that the RFC addresses Plaintiff's (1) concentration, persistence, and pace limitations, (2) social interaction limitations, and (3) adapting and managing limitations "in a manner consistent with the evidence." (Dkt. 16 at ECF p. 10). She reasoned:

> First, in terms of concentration, persistence, and pace limitations, the RFC states [Plaintiff] "can understand, remember, and carry out simple instructions for simple, repetitive tasks on a sustained basis." (Dkt. 7-2 at 16). Second, in terms of social interaction limitations, the RFC states [Plaintiff] should work in a "setting requiring no more than occasional interactions with coworkers, supervisors, and the general public." (*Id.*). Third, in terms of adapting and managing limitations, the RFC repeatedly emphasizes [Plaintiff's] abilities being limited to "simple, repetitive tasks" and "can

12

>tolerate simple changes in the routine work setting, and he can solve problems." (*Id.*).

(*Id.* at ECF pp. 10–11). The Magistrate Judge further found that "the RFC is supported by substantial evidence: recall, the RFC is nearly identical to Dr. Clark's report. Dr. Clark's report was relied upon due to its consistency with the evidence presented, creating the requisite logical bridge." (Dkt. 16 at ECF p. 11 (internal citation omitted)). Therefore, the Magistrate Judge reasoned, she could not "conclude that the RFC did not properly account for [Plaintiff's] conditions or their combination." (*Id.*).

Plaintiff argues the Magistrate Judge erred because the R&R addresses only whether the RFC was supported by substantial evidence but fails to address whether the ALJ committed *legal errors* in assessing it. (Dkt. 17 at ECF p. 7 (citing *Walters v. Astrue*, 444 F. App'x 913, 919–20 (7th Cir. 2011) ("[A]n error in failing to analyze and explain important evidence is not harmless simply because the ALJ could have addressed that evidence in a way that would survive substantial-evidence review.")). According to Plaintiff, the legal error here is that the ALJ "focused soley on evidence that favors [his] view and failed to address the wealth of contrary evidence that suggests [P]laintiff's mental impairments are intractable and adversely impact [his] ability to stay on task." (Dkt. 17 at ECF p. 7 (quoting *Courtney C. v. Saul*, No. 20 C 4016, 2022 WL 3369266, at *2 (N.D. Ill. Aug. 16, 2022))). In other words, the ALJ failed to explain "how *all the evidence* shows Plaintiff is capable of carrying out the RFC 8 hours a day, 5 days a week as . . . would be required of him." (*Id.* (emphasis added)).

13

An ALJ is not required to make explicit off-task findings in every case. Rather, an ALJ is "only required to incorporate limitations that []he found supported by the evidence." *Alvarado v. Colvin*, 836 F.3d 744, 751 (7th Cir. 2016).

In his decision, the ALJ considered Plaintiff's Function Report, his hearing testimony, and his wife's Third-Party Function Reports, which supported Plaintiff's position that he has problems with concentration, focus, and staying on task. (Dkt. 7-2 at ECF pp. 16–17; *see also id.* at 49–50). The ALJ also considered the medical opinions of Drs. Clark, Gray, and Jones, and Plaintiff's medical records from his treatment with Dr. Rhoton. (*Id.* at ECF pp. 17–20). The ALJ discounted Dr. Gray's opinion regarding Plaintiff's concentration deficits for reasons previously stated and relied principally on the opinion of Dr. Clark, as well as the medical records from Plaintiff's treatment with Dr. Rhoton, which reflected only moderate limitations in concentration, persistence, and pace. (*Id.*). Thus, the ALJ *did* consider the evidence that favored Plaintiff's inability to stay on task but, given the medical evidence, did not believe his concentration deficits reflected an inability to carry out the type of work consistent with the RFC 8 hours a day, 5 days a week. (*Id.* at ECF p. 17). As the Magistrate Judge found, the RFC fully accounts for his limitations that are supported by the record. The court declines Plaintiff's invitation to reweigh the evidence.

Lastly, Plaintiff faults the Magistrate Judge for concluding that the RFC was consistent with the evidence because, he maintains, it was not. (*See* Dkt. 16 at ECF pp. 10–11). As support, Plaintiff cites his and his wife's reports, which reflect that he does not handle stress well, suffers from panic attacks, and has difficulty completing tasks,

14

(Dkt. 17 at ECF pp. 8–9), and his hearing testimony that he "had a complete mental breakdown" at his last job in 2020,[3] (*id.* at ECF p. 9 (citing Dkt. 7-2 at ECF p. 45)). But again, the ALJ considered this evidence. (Dkt. 7-2 at ECF pp. 16–17). And the RFC did account for Plaintiff's difficulties managing stress. (*Id.* at ECF pp. 16–18; *see also* Section III.A.2. of this Entry). It limited him to simple, repetitive tasks in a routine work setting, and occasional interaction with others. (*Id.* at ECF p. 16). Accordingly, the court finds no error here.

      C.    **Subjective Symptom Analysis**

Finally, Plaintiff argues the Magistrate Judge erred by upholding the ALJ's subjective symptom analysis. The court may overturn an ALJ's subjective symptom analysis only if it is "patently wrong." *Eichstadt v. Astrue*, 534 F.3d 663, 667–68 (7th Cir. 2008). Such an analysis is "patently wrong" only if it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008).

Evaluating a plaintiff's subjective symptoms is a two-step process. First, the ALJ considers the plaintiff's subjective symptoms "and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Second, the ALJ determines the extent to which the plaintiff's alleged functional limitations and restrictions due to those symptoms "can reasonably be accepted as consistent with the objective medical and other evidence" to

---

[3] Plaintiff's termination was prior to the relevant period here and prior to his course of treatment with Dr. Rhoton. Thus, evidence that he had a mental breakdown at work prior to July 1, 2020, has little relevance to this proceeding.

decide "how the [plaintiff's] symptoms affect [his] ability to work." *Id.*; *see also* 20 C.F.R. § 416.929(a).

Plaintiff argues that the ALJ failed to account for his and his wife's statements regarding his daily life activities. For example, the ALJ failed to mention:

> [Plaintiff] has a hard time keeping in contact with friends and declines going out with them. He does not take part in any of his children's social activities. He gets distracted easily while cleaning, so it usually takes him all day. His spouse also reported that it takes him 2–3 times the amount of time it should to complete laundry, cleaning, and mowing, and he needs frequent reminders. She also reported that she has to hire a housekeeper [] some weeks to help with chores because tasks are not completed and he cannot keep a job. Finally, she also reported that he can only pay attention for 5 to 10 minutes.

(Dkt. 17 at ECF pp. 9–10 (internal citations omitted)).

In his decision, the ALJ cited Plaintiff's reports that he spends time with others about "1–2 times every three months [and] . . . he does not go out much, and . . . prefers to stay home." (Dkt. 7-2 at ECF p. 16). The ALJ also noted that Plaintiff "has problems completing tasks, with his concentration, and following instructions [and] . . . he loses focus every few minutes." (*Id.* at ECF pp. 16–17). The ALJ also cited Plaintiff's wife's report, which stated, among other things, that Plaintiff's "anxiety makes it hard for him to complete tasks, . . . he has a hard time keeping a job, and he has been sent home and laid off from a job due to his anxiety." (*Id.* at ECF p. 17). Thus, although the ALJ did not explicitly address each allegation, he did not ignore evidence that Plaintiff has a hard time keeping in contact with friends, gets distracted easily, and has problems completing tasks. He simply did not find that Plaintiff's statements regarding the limiting effects of his

symptoms were "entirely consistent" with the totality of the medical evidence and other record evidence.  (*Id.*).

Similarly, Plaintiff argues that "the R&R ignores the ALJ's impermissible reliance on selective 'normal' findings to discredit Plaintiff's *extensive* and consistent testimony regarding cognitive dysfunction."  (Dkt. 17 at ECF p. 10).  As support, Plaintiff once again cites to his own testimony about how he lost his job due to a mental breakdown, he has issues with concentration and focus, and his mental health has not improved.  (*Id.*). As stated previously, the ALJ considered this evidence and was not persuaded that Plaintiff's symptoms were as limiting as he presented.  Consequently, the court finds no error.

### IV.  Conclusion

For the reasons just explained, the court **OVERRULES** Plaintiff's Objection (Dkt. 17), **ADOPTS** the Magistrate Judge's Report and Recommendation, and **AFFIRMS** the Commissioner's decision denying benefits.  Final judgment shall issue by separate order.

**IT IS SO ORDERED** this 9th day of March 2026.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.